**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

Southern District of New York

Case number (If known): _____ Chapter 15

☐ Check if this is an
amended filing

## Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding   **12/15**

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).

| | |
|---|---|
| 1. **Debtor's name** | Pinnacle Global Partners Fund I Ltd. (in Official Liquidation) |

2. **Debtor's unique identifier**

**For non-individual debtors:**

☐ Federal Employer Identification Number (EIN)   ___ ___ – ___ ___ ___ ___ ___ ___ ___

☑ Other  Cayman Mutual Fund  . Describe identifier _____ .

**For individual debtors:**

☐ Social Security number:   xxx – xx– ____ ____ ____ ____

☐ Individual Taxpayer Identification number (ITIN):  **9** xx – xx – ____ ____ ____ ____

☐ Other _____ . Describe identifier _____ .

| | |
|---|---|
| 3. **Name of foreign representative(s)** | Andrew Morrison, David Griffin and John Batchelor |
| 4. **Foreign proceeding in which appointment of the foreign representative(s) occurred** | Cause No. FSD 231 of 2018 (RPJ), Grand Court of the Cayman Islands |

5. **Nature of the foreign proceeding**

*Check one:*

☐ Foreign main proceeding
☐ Foreign nonmain proceeding
☑ Foreign main proceeding, or in the alternative foreign nonmain proceeding

6. **Evidence of the foreign proceeding**

☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.

☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.

☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.

_____
_____

7. **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?**

☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)

☑ Yes

Debtor    Pinnacle Global Partners Fund I Ltd. (in Official Liquidation)
        Name    Case number *(if known)*_____

---

8.  **Others entitled to notice**    Attach a list containing the names and addresses of:

(i)   all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

---

9.  **Addresses**

**Country where the debtor has the center of its main interests:**

Cayman Islands

**Debtor's registered office:**

Suite 3212, 51 Market St., Camana Bay
Number        Street

30613
P.O. Box

Grand Cayman                KY
City            State/Province/Region    ZIP/Postal Code

Cayman Islands
Country

**Individual debtor's habitual residence:**

Number        Street

P.O. Box

City            State/Province/Region    ZIP/Postal Code

Country

**Address of foreign representative(s):**

Suite 3212, 51 Market St., Camana Bay

30613
P.O. Box

Grand Cayman                KY
City            State/Province/Region    ZIP/Postal Code

Cayman Islands
Country

---

10.  **Debtor's website** (URL)    _____

---

11.  **Type of debtor**    *Check one:*

☑ Non-individual (*check one*):

   ☑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

   ❑ Partnership

   ❑ Other.  Specify: _____

❑ Individual

---

Debtor   Pinnacle Global Partners Fund I Ltd. (in Official Liquidation)   Case number (if known)_____
         Name

---

**12. Why is venue proper in *this* district?**

Check one:

☐ Debtor's principal place of business or principal assets in the United States are in this district.

☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district:

_____

☑ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because:

_DEBTOR POSSESSES ASSETS IN THE DISTRICT_

---

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✗ _____      ANDREW MORRISON
Signature of foreign representative      Printed name

Executed on   05 14 2019
              MM / DD / YYYY

✗ _____      _____
Signature of foreign representative      Printed name

Executed on   _____
              MM / DD / YYYY

---

**14. Signature of attorney**

✗ _____   Date   5/15/2019
Signature of Attorney for foreign representative      MM / DD / YYYY

Warren Gluck
Printed name
Holland & Knight LLP
Firm name
31 W. 52nd St.
Number      Street
New York                              NY        10019
City                                  State     ZIP Code

(212) 513-3200                        warren.gluck@hklaw.com
Contact phone                         Email address

4701421                               NY
Bar number                            State

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | : | Chapter 15 |
|  | : |  |
|  | : | Case No. 19-_____(___) |
| PINNACLE GLOBAL PARTNERS | : |  |
| FUND I LTD. (in Official Liquidation) | : |  |
|  | : |  |
| Debtor in a | : |  |
| Foreign | : |  |
| Proceeding. |  |  |

---------------------------------------------------------

## LIST FILED PURSUANT TO BANKRUPTCY RULE 1007(a)(4)

I, Andrew Morrison, one of the duly appointed joint official liquidators and foreign representatives ("**Liquidators**") of Pinnacle Global Partners Fund I Ltd. (in Official Liquidation) (the "**Pinnacle Fund**"), a Cayman Islands mutual fund in liquidation under the supervision of the Grand Court of the Cayman Islands (the "**Cayman Court**"), Cause No. FSD 231 of 2018 (RPJ), pursuant to the Cayman Islands Companies Law (2018 Revision), hereby submits the following information as required by Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure, which provides:

> In addition to the documents required under § 1515 of the Code, a foreign representative filing a petition for recognition under chapter 15 shall file with the petition: (A) a corporate ownership statement containing the information described in Rule 7007.1; and (B) unless the court orders otherwise, a list containing the name and address of all persons or bodies authorized to administer foreign proceedings of the debtor, all parties to litigation pending in the United States in which the debtor is a party at the time of the filing of the petition, and all entities against whom provisional relief is sought under § 1519 of the Code.

Fed. R. Bankr. P. 1007(a)(4).

## Statement under Fed. R. Bankr. P. 7007.1

The Liquidators hereby state that Pinnacle Global Partners owns more than ten percent or more of the Pinnacle Fund.

**Name and Address of All Joint Liquidators in Foreign Proceedings of the Foreign Debtor**

The following individuals, with the corresponding business address, have been duly

appointed as Liquidators by the Cayman Court:

| | |
|---|---|
| Andrew Morrison and David Griffin | FTI Consulting (Cayman) Ltd., Suite 3212, 53 Market Street, Camana Bay, P.O. Box 30613, Grand Cayman, KY1-1203, Cayman Islands |
| John Batchelor | FTI Consulting (Hong Kong) Ltd., Level 35, Oxford House, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong |

### All Parties to Litigation in which the Foreign Debtor is a Party that is Pending in the United States at the time of the Filing of the Petition

There is no known pending litigation in the United States in which the Foreign Debtor is a party.

### All Entities Against Whom Provisional Relief Is Sought under 11 U.S.C. § 1519

The Liquidators are not seeking provisional relief.

I declare, under penalty of perjury under the laws of the United States of America, that the

information set forth above is based on my current knowledge, information and belief after reasonable

inquiry, and in contemplation of and subject to supplementation, true and correct.

Dated: _____, _____
      May 14th          , 2019

_____
**ANDREW MORRISON**
*Joint Official Liquidator of Pinnacle Global
Partners Fund I Ltd. (in Official Liquidation)*

2

IN THE GRAND COURT OF THE CAYMAN ISLANDS
FINANCIAL SERVICES DIVISION

CAUSE NO. FSD 231 OF 2018 (RPJ)

IN THE MATTER OF THE COMPANIES LAW (2018 REVISION)

AND IN THE MATTER OF PINNACLE GLOBAL PARTNERS FUND I LTD

WINDING UP ORDER

**UPON** the petition of Perlen Holdings Ltd and Nerthington Ltd (the **Petitioners**) dated 14 December 2018 for an order that Pinnacle Global Partners Fund I Ltd (the **Company**) be wound up (the **Petition**)

**AND UPON** reading the First Affidavit of Irina Vesselova sworn 12 December 2018, the First Affidavit of Gisela Nold-Nigg sworn 13 December 2018, the First Affidavit of David Griffin sworn 29 November 2018, the First Affidavit of Andrew Morrison sworn 29 November 2018, the First Affidavit of John Batchelor sworn 29 November 2018, the First Affidavit of Travis Royce Webster sworn 29 November 2018, the Second Affidavit of Travis Royce Webster sworn 27 December 2018, the First Affidavit of James Edmund Eggleton sworn 9 January 2019 and the Second Affidavit of James Edmund Eggleton sworn 15 January 2019

**AND UPON** hearing counsel for the Petitioners and counsel for the Company

**IT IS ORDERED** that:

1    The Company be wound up in accordance with the Companies Law.

2    David Griffin and Andrew Morrison of FTI Consulting (Cayman) Limited, Suite 3212, 53 Market Street, Camana Bay, Grand Cayman, Cayman Islands, and John Batchelor of FTI Consulting (Hong Kong) Limited, Level 35, Oxford House, Taikoo Place, 979 King's Road, Quarry Bay, Hong Kong be appointed as the Joint Official Liquidators of the Company (the **Liquidators**).

3    The Liquidators shall not be required to give security for their appointment.

4     The Liquidators shall be authorised to exercise the following powers conferred on them by Section 110(2) and Part I of the Third Schedule of the Companies Law without the further sanction or intervention of the Court.

5     The Liquidators be at liberty to appoint counsel, attorneys, and/or any other professional advisors, whether in the Cayman Islands or elsewhere as they may consider necessary to advise and assist them in the performance of their duties and on such terms as they may think fit and to remunerate them out of the assets of the Company.

6     The Liquidators be at liberty to seek recognition of the Company's liquidation and their appointment in the Hong Kong Special Administrative Region of the People's Republic of China, the Federative Republic of Brazil and the United States of America.

7     No suit, action or other proceeding shall be proceeded with or commenced against the Company except with the leave of the Court and subject to such terms as the Court may impose.

8     No disposition of the Company's property by or with the authority of the Liquidators in carrying out their duties and functions and exercise of their powers shall be voided by virtue of section 99 of the Companies Law.

9     The JOLs' remuneration and expenses be paid out of the assets of the Company in accordance with the Companies Winding Up Rules 2018 and Part III of the Insolvency Practitioners' Regulations 2018.

10    The Liquidators be at liberty to apply generally.



FINAL - Winding Up Order - 15 January 2019

11    The Petitioners' costs shall be paid out of the assets of the Company as an expense

of the liquidation, such costs to be taxed if not agreed with the Liquidators.

Dated this 15th day of January 2019

Filed the 17th day of January 2019

_____

**The Honourable Mr. Justice Parker**

**Judge of the Grand Court**

**THIS ORDER** was filed by Harney Westwood & Riegels, Attorneys-at-Law for the Petitioners, whose address for service is 4th Floor, Harbour Place, 103 South Church Street, PO Box 10240, Grand Cayman KY1-1002, Cayman Islands (**Ref:** 018027.0036/JGW/LBG/JYE).

FINAL - Winding Up Order - 15 January 2019

Warren E. Gluck, Esq.
Richard A. Bixter Jr., Esq.
(*pro hac vice forthcoming*)
Elliot A. Magruder, Esq.
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, NY 10019
Phone:  212-513-3200
Fax: 212-385-9010
warren.gluck@hklaw.com
richard.bixter@hklaw.com
elliot.magruder@hklaw.com

*Counsel for the Liquidators of Pinnacle*
*Global Partners Fund I Ltd. (in Official Liquidation)*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------

|  |  |  |
|---|---|---|
|  | : | Chapter 15 |
| In re: | : |  |
|  | : | Case No. 19-_____(___) |
| PINNACLE GLOBAL PARTNERS | : |  |
| FUND I LTD. (in Official Liquidation) | : |  |
|  | : |  |
| Debtor in a | : |  |
| Foreign | : |  |
| Proceeding. |  |  |

--------------------------------------------------------

### VERIFIED PETITION FOR RECOGNITION OF FOREIGN INSOLVENCY PROCEEDING AND APPLICATION FOR ADDITIONAL RELIEF PURSUANT TO SECTIONS 1504, 1507, 1509, 1515, 1517, 1520 AND 1521 OF THE BANKRUPTCY CODE

Andrew Morrison, David Griffin and John Batchelor, the duly appointed joint official liquidators and foreign representatives ("**Liquidators**") of Pinnacle Global Partners Fund I Ltd. (in Official Liquidation) (the "**Pinnacle Fund**"), a Cayman Islands mutual fund in liquidation under the supervision of the Grand Court of the Cayman Islands (the "**Cayman Court**"), Cause No. FSD 231 of 2018 (RPJ) (the "**Cayman Liquidation**"), pursuant to section 92 of the Cayman

Islands Companies Law (2018 Revision) (the "**Companies Law**"),[1] by its undersigned United

States counsel, Holland & Knight LLP, respectfully submits the Official Form Petition, this

Verified Petition (together, the "**Petition**"), the accompanying Declaration of Jayson Wood,

executed on May 14, 2019, and the exhibits thereto (the "**Wood Declaration**"), the Declaration of

Andrew Morrison, executed on May 14, 2019, and the exhibits thereto (the "**Morrison**

**Declaration**"), and the Declaration of Warren E. Gluck, executed on May 15, 2019, and the

exhibits thereto (the "**Gluck Declaration**"), for entry of an Order pursuant to chapter 15 of title

11 of the United States Code, 11 U.S.C. § 101 *et seq.* (the "**Bankruptcy Code**"):

(i)    recognizing the Cayman Liquidation as a foreign main proceeding or, in the alternative, a foreign nonmain proceeding, pursuant to chapter 15 of the Bankruptcy Code, and the Liquidators as the Pinnacle Fund's foreign representatives under sections 1509 and 1517 of the Bankruptcy Code;

(ii)    granting automatic relief pursuant to section 1520 of the Bankruptcy Code;

(iii)    granting other and additional relief pursuant to sections 1507 and 1521(a) and (b) of the Bankruptcy Code, including authorizing the Liquidators to examine witnesses, take evidence and seek the production of documents concerning the assets, affairs, rights obligations or liabilities of the Pinnacle Fund by:

(a)    issuing discovery requests to Halim, the sole director of the Pinnacle Fund, and Pinnacle Global Partners LLC ("**Pinnacle LLC**") and its executives and employees, the New York-based co-investment manager of the Pinnacle Fund, for copies of all of the books and records and other financial documents of the Pinnacle Fund concerning the valuation, assets and liabilities of the Pinnacle Fund, which Pinnacle LLC and its principals have refused to produce in the Cayman Liquidation despite multiple requests from the Liquidators as authorized by the Companies Law, which has hindered the winding down of the Pinnacle Fund;

(b)    issuing discovery requests to Citibank N.A. ("**Citibank**"), which holds or held accounts for (i) Pinnacle LLC that may have been remitted wire transfers of approximately $6 million from the Pinnacle Fund between 2016 and 2017 ("**Citibank Account**"); and (ii) the sole director of the Pinnacle Fund that was remitted a wire transfer of approximately $200,000 in November 2015, as a means of determining the nature of

---

[1] Excepts of the relevant provisions of the Companies Law are attached as Exhibit 1 to the Wood Declaration.

the transfers and whether the transfers had a legitimate business purpose relating to the Pinnacle Fund's worldwide investments;

(c) issuing discovery requests to intermediary banks (collectively, the "**New York Banks**") located in the Southern District of New York (the "**District**") that process U.S. dollar-denominated and foreign currency wire transfers and maintain records of such transfers with respect to the Pinnacle Fund, as well as any related persons and entities that may have received transfers from Pinnacle LLC or its direct or indirect subsidiaries or parent (collectively, the "**Discovery Subjects**"), so as to ascertain information concerning the Pinnacle Fund's assets prior to the commencement of the Cayman Liquidation as well as claims against Pinnacle LLC, its principals and/or third-parties (as set forth in detail below and in the accompanying Morrison and Wood Declarations);

(d) examining any witnesses located within the territorial jurisdiction of the United States;

(e) granting the Liquidators authority to assert claims of the Pinnacle Fund against parties that are subject to the jurisdiction of courts in the United States;

(f) ordering that the administration or realization of any assets of the Pinnacle Fund within the territorial jurisdiction of the United States be entrusted to the Liquidators as the exclusive representatives of the Pinnacle Fund in the United States; and

(g) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

1.    This Court previously has held that "[u]nique to the Bankruptcy Code," chapter 15 contains a statement of purpose, which is: "to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency . . . ." *In re Oi Brasil Holdings Coöperatief U.A.*, 578 B.R. 169, 193 (Bankr. S.D.N.Y. 2017) (citing 11 U.S.C § 1501(a)).

2.    Chapter 15 and the Model Law "are designed to optimize disposition of international insolvencies by facilitating appropriate access to the court system of a host country (the United States, in the case of Chapter 15) by a representative of an insolvency proceeding

pending in a foreign country." *In re B.C.I. Finances Pty Ltd.*, 583 B.R. 288, 292 (Bankr. S.D.N.Y.

2018) (citations omitted).  Accordingly, when "interpreting Chapter 15" the court shall "consider

its international origin, and the need to promote an application of this chapter that is consistent

with the application of similar statutes adopted by foreign jurisdictions." *Oi Brasil*, 578 B.R. at

193 (citing 11 U.S.C. § 1508).

3.      Consequently, "Chapter 15 expresses a strong preference for providing assistance

to foreign representatives in appropriate circumstances. *That congressional preference is not to

be lightly disturbed.*"  *In re Platinum Partners Value Arbitrage Fund L.P*, No. 18CV5176 (DLC),

2018 WL 3207119, at *4 (S.D.N.Y. June 29, 2018) (emphasis added and footnote omitted)

("*Platinum Partners II*").

4.      Among the express objectives of Chapter 15 is to promote the "fair and efficient

administration of cross-border insolvencies that protects the interests of all creditors, and other

interested entities, including the debtor[.]"  11 U.S.C. § 1501(a)(3).  Therefore, "Chapter 15 …

provides courts with broad, flexible rules to fashion relief that is appropriate to effectuate the

objectives of the chapter[.]"  *In re Oi S.A.*, 587 B.R. 253, 264 (Bankr. S.D.N.Y. 2018).

5.      This Court has "frequently understood the importance of judicial deference to

foreign bankruptcy proceedings," as "the equitable and orderly distribution of a debtor's property

requires assembling *all* claims against the limited assets in a single proceeding; if all creditors

could not be bound, a plan of reorganization would fail."  *In re Agrokor d.d.*, 591 B.R. 163, 184

(Bankr. S.D.N.Y. 2018) (emphasis in original) (citations omitted); *see also In re Platinum Partners

Value Arbitrage Fund L.P.*, 583 B.R. 803, 809 (Bankr. S.D.N.Y.) ("Comity plays a significant role

in cross-border insolvency proceedings."), *reconsideration denied*, 2018 WL 3207119 (S.D.N.Y.

June 29, 2018) ("*Platinum Partners I*").

6.      The Liquidators request recognition of the Cayman Liquidation as a foreign main proceeding primarily to obtain this Court's assistance in obtaining critical discovery from entities subject to the jurisdiction of this Court.

7.      First, the Liquidators seek discovery of books and records from Pinnacle LLC which, although formed under the laws Delaware, maintains an office address in New York and, upon information and belief, conducted no business in Delaware aside from filing registration documents and maintaining a registered agent.  Pinnacle LLC, from its office in New York, assisted Pinnacle Global Partners ("**Pinnacle Equity**"), the sole shareholder and co-investment manager of the Pinnacle Fund, in substantially all business and investment decisions on behalf of the Pinnacle Fund.

8.      These books and records will likely provide information concerning transactions involving the Pinnace Fund and its principals, shareholders, counterparties and lenders, the assets and liabilities of the Pinnacle Fund, and potential sales of the Pinnacle Fund's assets at a time when it was unable to meet outstanding loan commitments.  Access to the Pinnacle Fund's books and records is of particular importance here because, not only is Pinnacle LLC refusing to provide such documents, but the lone executive director of the Pinnacle Fund is likewise refusing to cooperate with the Liquidators' requests, notwithstanding his obligations under the Companies Law.

9.      The Liquidators also seek discovery of records from banks concerning transactions involving the Pinnacle Fund, Pinnacle LLC, Pinnacle Equity and various third-parties.  In particular, the Liquidators seek discovery concerning an account held at Citibank in the United States that Pinnacle LLC may have used to receive millions of dollars in improper transfers from the Pinnacle Fund.

10.     The Liquidators also seek discovery to determine the asset position of the Pinnacle Fund and to investigate potential claims arising from the transactions that depleted the Pinnacle Fund of its assets and precipitated the Cayman Liquidation.

11.     The Pinnacle Fund regularly transacted business in U.S. dollars.  For instance, the defaulted loans that contributed to the Pinnacle Fund's insolvency were issued in U.S. dollars. Moreover, the Pinnacle Fund's aggregate asset value was also calculated in U.S. dollars. Consequently, the bulk of transactions involving the Pinnacle Fund were likely cleared through intermediary or correspondent banks located in the Southern District of New York.  These banks maintain the records of these wire transfer transactions, and those records are essential for the Liquidators to gain a better understanding of how the Pinnacle Fund's assets and funds were transferred prior to the commencement of the Cayman Liquidation, and to investigate claims of the Pinnacle Fund against its directors and executives, Pinnacle LLC and various third-parties.

12.     As this Petition, the accompanying declarations and the exhibits thereto demonstrate, the Cayman Liquidation should be recognized as a foreign main proceeding.  In the event that the Cayman Liquidation is recognized as a foreign nonmain proceeding, this Court has the discretion to order whatever protections and relief it deems appropriate pursuant to sections 1507 and 1521 of the Bankruptcy Code, including the requested discovery relief.

13.     The Liquidators seek precisely the type of relief that chapter 15 was designed to provide, and the Cayman Liquidation and this Petition meet all the requirements for recognition and the requested relief.  In particular, the Liquidators were appointed by the Cayman Court to administer the Pinnacle Fund's assets, liabilities, and any ongoing business occurring in connection with the court-ordered Cayman Liquidation of the Pinnacle Fund pursuant to the Companies Law, a law relating to insolvency or adjustment of debt.

14.    Likewise, as recently concluded by this Court, the Cayman Liquidation is a collective judicial proceeding as referenced in 15 U.S.C. § 101(23), subject to the oversight and control of the Cayman Court, encompassing all creditors and stakeholders of the Pinnacle Fund, which is pending in the Cayman Islands, the country in which the Pinnacle Fund was formed, maintained its registered office, maintains its center of main interests ("**COMI**"), and where the Liquidators are engaged in substantial, non-transient economic activity associated with the wind-down and liquidation of the Pinnacle Fund's business and affairs.  *See In re Pirogova*, 593 B.R. 402, 408 (Bankr. S.D.N.Y. 2018) ("The location of the debtor's COMI is the sole criterion for qualifying as a foreign main proceeding.")

15.    Pursuant to section 1516(c) of the Bankruptcy Code, the Cayman Islands are presumed to be the Pinnacle Fund's COMI because the Pinnacle Fund was registered as a mutual fund subject to the supervision of Cayman Islands regulators and maintains its registered office there. This Petition and the accompanying declarations further demonstrate that the Pinnacle Fund's counterparties, directors and creditors have clear and actual knowledge that the Pinnacle Fund was a Cayman Islands entity.  Since the commencement of the Cayman Liquidation, the Cayman Islands are the obvious and demonstrable "nerve center" of the Pinnacle Fund's ongoing liquidation.  Hence, the Cayman Liquidation is a "foreign main proceeding" within the meaning of sections 101(23), 1502(4), 1516(c), and 1517(b)(1) of the Bankruptcy Code.

16.    This and other Courts have recognized similar liquidation proceedings of Cayman Island entities as foreign main proceedings.  *See, e.g., In re Ocean Rig UDW Inc.*, 570 B.R. 687, 702 (Bankr. S.D.N.Y. 2017) ("The Cayman Proceedings are 'foreign main proceedings' within the meaning of section 1502(4) of the Bankruptcy Code because each Debtor's COMI is the Cayman Islands."); *In re Suntech Power Holdings Co., Ltd.,* 520 B.R. 399 (SMB) (Bankr. S.D.N.Y. 2014)

(commencement of Cayman proceedings, together with subsequent activities of liquidators had the effect of transferring holding company's COMI to Cayman); *In re Millard*, 501 B.R. 644, 647 (Bankr. S.D.N.Y. 2013).

17.    Moreover, the precise relief requested here – authorization to take discovery from Pinnacle LLC, Citibank and the other New York Banks in support of the Cayman Liquidation and prospective claims arising from the Pinnacle Fund's transactions within that liquidation – has been granted recently by this and other courts in virtually identical contexts.    *See, e.g., Platinum Partners I*, 583 B.R. at 811 (authorizing discovery in support of liquidation of Cayman Islands-based hedge funds because its auditors had a "unique set of documents and analyses concerning the Funds' assets, liabilities and financial affairs which would assist the Liquidators' investigation and understanding of the Funds' affairs for the two years immediately prior to the Funds' liquidations"); *In re Platinum Partners Value Arbitrage Fund L.P.,* No. 16-12925 (SCC) (Bankr. S.D.N.Y.) (recognizing Cayman Islands liquidation as a foreign main proceeding and authorizing issuance of subpoenas to banks located in New York); *In re Niton Fund SPC,* 15-13252 (SMB) (Bankr. S.D.N.Y.) (same); *In re Lawndale Group S.A.,* No. 15-11352 (SCC) (Bankr. S.D.N.Y. July 6, 2015) (recognizing liquidation of British Virgin Islands entity as foreign main proceeding and granting 1521(a)(4) request to engage in intermediary bank discovery regarding claims); *In re Ardent Harmony Fund Inc.*, No. 16-12282 (Bankr. S.D.N.Y. 2016) (recognizing Cayman Islands liquidation and authorizing broad discovery).

18.    The Pinnacle Fund maintains intangible assets in the United States and in this District.

19.    For all of these reasons and as will be shown below, the Liquidators respectfully submit that: (i) the Cayman Liquidation is a foreign main proceeding within the meaning of

sections 101(23) and 1502(4) of the Bankruptcy Code; (ii) the Liquidators are the duly appointed foreign representatives of the Pinnacle Fund within the meaning of section 101(24); (iii) the Liquidators and the Petition comply with all the requirements of section 1515 and Bankruptcy Rule 1007(a)(4); and (iv) recognition of the Cayman Liquidation would not be contrary to public policy under Bankruptcy Code section 1506. *See In re ENNIA Caribe Holding*, 594 B.R. 631, 640 (Bankr. S.D.N.Y. 2018) (noting that the public policy exception is a "narrow one that should be applied sparingly").

20.     Under the circumstances, this Court can and should enter an order recognizing the Cayman Liquidation as a foreign main proceeding under section 1517(b)(l), or in the alternative, as a foreign nonmain proceeding under section 1517(b)(2) of the Bankruptcy Code, and granting additional relief as set forth in sections 1507, 1520 and 1521 of the Bankruptcy Code.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and sections 109 and 1501 of the Bankruptcy Code.

22.     Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1410(3) because the Pinnacle Fund has property in the United States and within this District.

23.     The Pinnacle Fund satisfies the property requirement in 11 U.S.C. § 109(a). *See, e.g., In re Barnet*, 737 F.3d 238, 247-51 (2d Cir. 2013).

24.     Additionally, entities from which the Liquidators will be seeking discovery, Pinnacle LLC, Citibank and the other New York Banks, also are subject to jurisdiction in this District.

25.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(P).

## FACTUAL BACKGROUND

A.     **Location, Ownership and Management of the Pinnacle Fund**

26.     The Pinnacle Fund was initially incorporated on December 6, 2013 as a Cayman Islands exempted company.  On March 6, 2014, the Pinnacle Fund registered with the Cayman Islands Monetary Authority ("**CIMA**") as a mutual fund.

27.     The Pinnacle Fund maintained a registered office at Maples Corporate Services Limited ("**Maples**"), Ugland House, South Church Street, PO Box 309, Grand Cayman KY1-1104, Cayman Islands.  Maples resigned as the Pinnacle Fund's registered office provider in December 2018.  In January 2019, the Pinnacle Fund's registered office was changed to c/o FTI Consulting (Cayman) Ltd., Suite 3212, 53 Market Street, Camana Bay, P.O. Box 30613, Grand Cayman, KY1-1203, Cayman Islands.

28.     Pinnacle Equity, a Cayman Islands registered limited company, is the sole ordinary shareholder of the Pinnacle Fund.  The Pinnacle Fund issued two classes of shares: ordinary and participating.

29.     Pinnacle LLC is a Delaware limited liability company that operated from New York and at one point maintained an address at 420 Lexington Avenue, Room 2805, New York, New York 10170.  Aside from filing incorporation documents and maintaining a registered agent, Pinnacle does not appear to have other connections to Delaware, such as employees or offices. Upon information and belief, the principals of Pinnacle LLC served in a functionally identical capacity for Pinnacle Equity and the Pinnacle Fund.

30.     The Pinnacle Fund was not managed in accordance with typical corporate formalities.  For instance, Pinnacle LLC and Pinnacle Equity seemingly operated interchangeably as the Pinnacle Fund's manager, evidencing a lack of appropriate governance protocols for the Pinnacle Fund.  Moreover, in violation of CIMA rules, the Pinnacle Fund failed to appoint auditors or fund administrators throughout its existence.

31.     The Pinnacle Fund appointed a single executive director, Sam Halim ("**Halim**").[2] Upon information and belief, Halim worked with Jay Chapler ("**Chapler**") to conduct the day-to-day operations of the Pinnacle Fund

32.     The Liquidators' preliminary investigation indicates that Halim and Chapler each reside in the United States.

33.     Upon information and belief, Immanuel Gerstner ("**Gerstner**") served as a non-executive director of the Pinnacle Fund until his resignation in October 2018.  Gerstner has stated that he resigned in part because he was refused access to the Pinnacle Fund's books and records. The Pinnacle Fund's previous Cayman Islands legal counsel and registered office provider acknowledged their resignations as premised on similar "red flags" in the management and operations of the Pinnacle Fund.

34.     As noted above, Pinnacle LLC maintained a bank account at Citibank which it used, *inter alia*, to pay lenders of the Pinnacle Fund.  Moreover, between January 2016 and January 2017, bank records obtained from the originating bank show that the Pinnacle Fund transferred more than $1.6 million from an account in Switzerland to the Citibank Account.  The Pinnacle Fund transferred further payments totaling (i) $2.2 million to a Canadian bank account held by Pinnacle LLC and/or Pinnacle Equity; and (ii) $2.5 million to unknown accounts (and possibly the Citibank Account) held by Pinnacle LLC and/or Pinnacle Equity. Upon information and belief, the Liquidators consider there may have been additional payments of $2.4 million made to

---

[2] The Pinnacle Fund appointed five non-executive directors between 2014 and 2015.  It is unclear whether the non-executive directors administered the Pinnacle Fund.  Two of the five were "straw" directors that served in such a capacity for one month following the registration of the Pinnacle Fund with CIMA.  Thus far, the Liquidators have not discovered any evidence indicating that the non-executive directors were involved with the Pinnacle Fund in any operational or managerial role, except in relation to Immanuel Gerstner, who is discussed in more detail in paragraph 33.

Pinnacle LLC and/or Pinnacle Equity. The Liquidators are awaiting confirmation from the originating bank in this regard.

35.     Furthermore, in November 2015, a payment in the amount of approximately $200,000 was made to an account held at Citibank by Halim.

36.     As discussed below, Halim and Chapler refuse to cooperate with the Liquidators' winding down of the Pinnacle Fund.  Consequently, the Liquidators cannot yet determine the capacity in which Halim and Chapler acted, including whether they acted via Pinnacle LLC and/or Pinnacle Equity.

**B.     The Purported Assets and Investments of the Pinnacle Fund**

     **1.     Overview**

37.     Pinnacle LLC and/or Pinnacle Equity (via Halim and likely Chapler) supposedly formed the Pinnacle Fund primarily to invest in real property and natural resources, and to trade securities.  The Liquidators' preliminary investigation indicates that the vast majority of the Pinnacle Fund's transactions occurred in U.S. dollars.

38.     The Pinnacle Fund purportedly made these investments in Canada, Turks and Caicos, Hong Kong and Brazil.  The Liquidators' have learned that a substantial majority of the Pinnacle Fund's investments were in fact owned by or subject to the superior rights of Pinnacle Equity or third-parties.  For instance, Pinnacle Equity held the interest in the Pinnacle Fund's Brazilian investment via Global Serviços De Engenharia Sociedade Empresaria Limitada ("**GSE**").

39.     At one point, relying on information supplied by Pinnacle LLC and/or Pinnacle Equity, an independent accounting firm valued the Pinnacle Fund's assets at approximately $268 million.  On October 14, 2016, Halim and Chapler executed an affidavit in New York claiming

that Pinnacle Equity "as of this date, has pledgeable [sic] assets in excess of 600 Million USD." Gerstner reiterated his statement in the affidavit to a Pinnacle Fund lender.

40.     Notably, since the liquidation process began in January 2019, no current investors nor participating shareholders have appeared in the liquidation.  The Liquidators were provided with a copy of a subscription agreement in relation to one participating shareholder and located a receipt of $945,000 in January 2016 within the Pinnacle Fund's bank statements. However, the bank statements evidence that $973,500 was repaid to the participating shareholder in February 2016. The Liquidators have issued correspondence to the participating shareholder; however, no response has been received to date. There is no information *vis a vis* the identity or existence of any other purported shareholders and investors.   Moreover, notwithstanding the pending liquidation and illiquid aspects of the Pinnacle Fund's investments, there is no indication that redemptions were halted.  Both Halim and Chapler refuse to furnish information on these subjects.

41.     The Pinnacle Fund purports to have made investments in four countries.   A summary of each investment follows.

**2.     Natural Resource Investments in Brazil**

42.     The Pinnacle Fund reputed to hold interests in natural resources in Brazil.  The Liquidators' investigation has yet to verify the Pinnacle Fund's representations about this investment.  Rather, it appears that the nature of the Pinnacle Fund's Brazilian investments do not exist.

43.     First, the Pinnacle Fund (through Pinnacle Equity) allegedly owns a 20% shareholding in GSE, a Brazilian company which purportedly owns a forestry in Brazil.  However, pursuant to land title searches, GSE is not the registered owner of the forestry. The Liquidators' investigations identified that various deeds of transfer of the forestry were filed with the Brazilian

land registry in an apparent attempt to effect the transfer of title to GSE. However, the Brazilian land registry was unable to obtain formally executed deeds and was therefore unable to register the deeds.  The current owners of the parcels of land which comprise the forestry advised the Liquidators that they have no knowledge of or affiliation with GSE.

44.    The claimed value of the Pinnacle Fund's 20% interest in GSE is approximately $194 million – more than two-thirds of the Pinnacle Fund's supposed equity value of approximately $268 million.

45.    Second, the Pinnacle Fund also purportedly owns $20 million in lumber inventory unrelated to GSE.  The Liquidators have been unable to locate any information regarding this asset.

46.    Third, the Pinnacle Fund purportedly owns valid transport and export licenses with regard to the lumber, however the Brazilian government has no records of any lumber licenses held by GSE.

47.    Fourth, GSE allegedly granted the Pinnacle Fund 3 billion tons of internationally registered carbon credits.  The United Nations database cataloguing ownership of carbon credits does not list the Pinnacle Fund, Pinnacle Equity, Pinnacle LLC or GSE.

48.    Three days after the issuance of the Liquidation Order (as defined below), the website for the Pinnacle Equity's Brazilian timber interests went offline.

**3.    The Securities Portfolio in Hong Kong**

49.    Per an accounting report, the Pinnacle Fund purportedly invested in a securities portfolio in Hong Kong valued at approximately $36.5 million, subject to a repurchase agreement liability of approximately $10 million.

50. The Liquidators' initial investigation has produced no evidence that the Pinnacle Fund invested in the securities in the stated amounts. In fact, the Liquidators cannot determine if the securities portfolio ever existed.

51. Rather, the underlying transactions seem to be unnecessarily complex and shrouded in secrecy, as a means of disguising the true beneficiaries to potentially siphon away assets of the Pinnacle Fund to the detriment of its creditors (the "**Securities Transactions**"). Moreover, multiple parties to the Securities Transactions assert that correspondence and documents facilitating the Securities Transactions are forged.

52. The Pinnacle Fund reputedly held approximately 300 million shares of various publicly traded Hong Kong companies (the "**Hong Kong Shares**").[3] The Pinnacle Fund assigned the Hong Kong Shares a market value of $46.5 million and a net portfolio value of $36.5 million.

53. In order to purchase a portion of the Hong Kong Shares, the Pinnacle Fund purportedly entered into a loan and securities repurchase agreement (the "**Repurchase Agreement**") in the approximate amount of $9.9 million. The Repurchase Agreement allegedly required the Pinnacle Fund to pledge all of the Hong Kong Shares as collateral to be held in a depository bank. The lender under the Repurchase Agreement denies knowledge and existence of all related agreements and securities, including the Hong Kong Shares.

54. The Liquidators' preliminary investigation of the Securities Transactions and Repurchase Agreement cannot validate whether the Pinnacle Fund owned the Hong Kong Shares, or if the Hong Kong Shares existed at all.

55. Further evidence casts doubt on the legitimacy of the Securities Transactions. Multiple counterparties are alleged to act as custodians, brokers and intermediaries, presumably as

---

[3] The titular owner of the Hong Kong Shares was "Great Wealth Asia Investment Ltd. c/o Pinnacle Equity."

a means of ensuring the legality of the transactions (the "**Counterparties**"). However, various Counterparties deny the authenticity of account statements and email correspondence supposedly evidencing the Securities Transactions.   Certain of the Counterparties further repudiate any knowledge of whether the Pinnacle Fund even held the Hong Kong Shares.

### 4.    Real Estate Holdings in Canada and Turks and Caicos

56.    The Pinnacle Fund claims to have invested in real property in Canada and Turks and Caicos.  As with the investments in Brazil and Hong Kong, further investigation is needed.

57.    First, the Pinnacle Fund, based on current information, is believed to hold a majority interest in Ironshore Investments Ltd. ("**Ironshore**"), which owned real property in Turks and Caicos (the "**TC Property**").   A search of public filings does not disclose the ownership structure of Ironshore and at the present time, this interest of the Pinnacle Fund is disputed by third parties.  There are ongoing legal proceedings in Turks and Caicos on the issue of the ownership interest in Ironshore as further discussed in paragraph 60 below.

58.    In 2017, a hurricane inflicted considerable damage on the TC Property.  Ironshore filed an insurance claim, netting between $4-5 million in proceeds.

59.    At that time, an unnamed lender held a secured charge over the TC Property as collateral for a $4.3 million loan to Ironshore.  A third-party valuation firm conducted a valuation of the TC Property in 2017 (pre-hurricane) and provided a market value of $12.3 million.

60.    The Liquidators requested that the Pinnacle Fund's pre-liquidation counsel in Turks and Caicos freeze the insurance proceeds and store them in an escrow account until otherwise instructed.  Counsel has yet to respond.   The Liquidators have initiated legal proceedings in Turks & Caicos to establish the Pinnacle Fund's ownership, and by which to preserve the Pinnacle Fund's interest in Ironshore.

61.     Second, the Pinnacle Fund purportedly owned real property in Canada valued at approximately USD $5.5 million.  The Liquidators' attempts to confirm that the Pinnacle Fund was the shareholder of the subsidiary that owned the Canadian property have been ignored. However, the Liquidators have obtained a property search which concluded that the Canadian property was sold in March 2018.

**C.      Loans to the Pinnacle Fund and its Subsequent Default**

62.     In order to fund certain of the investments, the Pinnacle Fund entered into credit facilities with British Virgin Islands-based entities Nerthington Ltd. ("**Nerthington**") and Perlen Holdings Ltd. ("**Perlen**," and, collectively with Nerthington, the "**Petitioning Creditors**").

63.     Between 2016 and 2017, Nerthington loaned the Pinnacle Fund approximately $4 million, purportedly to finance the purchase of the Hong Kong Shares (the "**Nerthington Loan**").

64.     In June 2016, Perlen and the Pinnacle Fund executed a profit participation agreement wherein Perlen loaned the Pinnacle Fund $11 million to acquire, develop and manage real property and to trade the Hong Kong Shares.  In March 2017, Perlen and the Pinnacle Fund executed a second participation agreement whereby the Pinnacle Fund deployed the proceeds to acquire and develop the real property investment in Canada (collectively, the "**Perlen Loans**").

65.     Ultimately, Nerthington loaned the Pinnacle Fund approximately $4 million, while Perlen advanced approximately $14.5 million.

66.     The Pinnacle Fund failed to pay the required interest and defaulted on the Nerthington and Perlen Loans.

67.     In December 2017, the Pinnacle Fund and the Petitioning Creditors executed an agreement setting forth the Pinnacle Fund's repayment obligations of all amounts due under the Loans (the "**Settlement Agreement**"), including principal and interest.

68.     During 2018, the Pinnacle Fund made three interest payments to Perlen and none to Nerthington.  The Pinnacle Fund defaulted on the Settlement Agreement.

**D.     The Petition for Cayman Liquidation and the Appointment of the Liquidators**

69.     On or about October 29, 2018, the Petitioning Creditors filed statutory demands under the Companies Law demanding that the Pinnacle Fund repay approximately $20 million due and owing under the Settlement Agreement.  The Pinnacle Fund did not dispute its debt.

70.     The Pinnacle Fund made no payments to the Petitioning Creditors during the demand period.

71.     On December 14, 2018, the Petitioning Creditors petitioned the Cayman Court for a liquidation order based on the Pinnacle Fund's insolvency, *i.e.*, the Pinnacle Fund's inability to pay debts owing the Petitioning Creditors under the Settlement Agreement. (the "**Winding-Up Petition**").

72.     On January 15, 2019, the Cayman Court granted the Winding-Up Petition, resulting in a compulsory liquidation of the Pinnacle Fund before the Cayman Court (the "**Liquidation Order**").

73.     As set forth in the Liquidation Order, the Cayman Court, *inter alia*, (i) ordered that the Pinnacle Fund be wound up in accordance with the Companies Law and under the supervision of the Cayman Court; (ii) appointed the Liquidators as the official liquidators of the Pinnacle Fund; and (iii) authorized the Liquidators to commence proceedings in the United States for recognition of the Cayman Liquidation and their appointment.

74.     Though an accounting report claimed that the Pinnacle Fund had $240 million in equity at the time of the report, the Liquidators have not identified any participating investors or

shareholders, aside from Pinnacle Equity (the sole ordinary shareholder), and a single investment of less than $1 million which appears to have been repaid, as detailed in paragraph 40.

75.    Consequently, the Liquidators declared the Pinnacle Fund insolvent.  At the same time, the Pinnacle Fund faced creditor claims of more than $35 million.

76.    On January 29, 2019, Halim, on behalf of the Pinnacle Fund, and in his capacity as its sole executive director (the "**Appellant**"), appealed the Cayman Court's making of the Liquidation Order to the Court of Appeal of the Cayman Islands (the "**Court of Appeal**") on grounds that the Winding-Up Petition was defective and a nullity and so the Cayman Court could not and should not have made the Liquidation Order (the "**Liquidation Appeal**").

77.    On February 8, 2019, the Petitioning Creditors notified the Court of Appeal and the Appellant that the Petitioning Creditors objected to the Appellant's failure to seek the leave of the Cayman Court before commencing the Liquidation Appeal as the Appellant was required to do under the procedural rules of the Court of Appeal.

78.    On March 12, 2019, the Court of Appeal ruled in favour of the Petitioning Creditors on that objection, with the effect that the Appellant could only (absent a further order of the Cayman Court or the Court of Appeal) pursue certain aspects of the Liquidation Appeal, but not others.

79.    On April 4, 2019, the Petitioning Creditors and the Liquidators received an order from the Cayman Court declaring that counsel for the Appellant in the Liquidation Appeal had ceased to act as attorney of record.

80.    On April 8, 2019, the Cayman Court ordered that the Appellant pay, within 21 days, the sum of $150,019 as security for the Petitioning Creditors' costs in defending the Liquidation Appeal in order for the Liquidation Appeal to proceed.  To date, no response from, or payment has

been made by, the Appellant.  The Liquidators' Cayman Islands legal counsel confirmed that they

will request the Cayman Court to formally dismiss the appeal.

**E.**      **The Progress of the Cayman Liquidation and the Liquidators' Investigation**

81.     Since their appointment, the Liquidators have worked, primarily from the Cayman

Islands, to wind down the Pinnacle Fund for the benefit of the Petitioning Creditors, other creditors

and all additional stakeholders.

82.     On February 11, 2019, the Liquidators noticed the first creditors' meeting.  On

March 21, 2019, the Liquidators held the meeting by telephone conference at their office in the

Cayman Islands (the "**First Creditors' Meeting**").

83.     A  liquidation  committee  was  elected  at  the  First  Creditors'  Meeting  (the

"**Liquidation Committee**").  The first Liquidation Committee meeting was held by telephone

conference on April 4, 2019.

84.     However, the Pinnacle Fund's primary assets are still being investigated.   At

present, the Liquidators are investigating, *inter alia*, potential claims and causes of action to

recover amounts due from Pinnacle LLC, Pinnacle Equity, Halim, Chapler, GSE and third-parties,

connected with the liquidation of the Pinnacle Fund.  In particular, the Liquidators have filed this

application, *inter alia,* to obtain: (1) documents relating to the Pinnacle Fund in the possession,

custody, or control of the director of the Pinnacle Fund and the principals of Pinnacle LLC and

Pinnacle Equity, the co-investment managers; (2) banking records from the Citibank Account to

which the Pinnacle Fund transferred Pinnacle LLC a minimum of $1.6 million and $200,000 to

Halim;  and  (3)  banking  records  related  to  the  Pinnacle  Fund,  its  managers,  shareholders,

counterparties (known and unknown) and companies in which it invested, all of which engaged in

U.S. Dollar wire transactions.

85.    The Liquidators have been unable to obtain any of the Pinnacle Fund's books and records from Halim, Pinnacle LLC or Pinnacle Equity.  These records are crucial to understanding the causes of the Pinnacle Fund's insolvency and asset position, and to tracing the flow of funds among the Pinnacle Fund, its principals, managers, shareholder and unaffiliated counterparties – if some of these counterparties even exist at all.

## THE INSOLVENCY LAWS GOVERNING CAYMAN ISLANDS COMPANIES

### A.    Sources and History of Cayman Islands Law

86.    The Cayman Islands is a British Overseas Territory and, as such, its laws are derived from: (a) original local statutes enacted by the local general legislative assembly; (b) English common law as developed and applied by the courts of the Cayman Islands; (c) statutes of England and Wales in existence at the time of settlement, as subsequently applied, amended, repealed and replaced by statutes and subsidiary legislation enacted in and applicable to the Cayman Islands; (d) Orders in Council made by prerogative Order of the British Sovereign and made specifically applicable to the Cayman Islands; and (e) statutes of the United Kingdom Parliament that have been expressly extended to apply to the Cayman Islands.

87.    Given that the Cayman Islands is a relatively small jurisdiction, the extent of its body of case law is not nearly as voluminous as many other common law jurisdictions.  The court of first instance is the Grand Court which will, as a matter of judicial comity, follow its own previous decisions unless they are shown to be wrong.[4]

88.    There is a right of appeal from the Grand Court to the Court of Appeal.  The final appellate court is the Judicial Committee of the Privy Council (the "**Privy Council**").  The Grand

---

[4] Re Bank of Credit & Commerce International, CILR 56 [1994-95].

Court is bound by decisions of the Court of Appeal and by decisions of the Privy Council on appeals originating from the Cayman Islands.

**B.** **General Insolvency Law of the Cayman Islands and Methods of Winding-Up**

89.    The substantive law contained in Part V of the Companies Law is supplemented by detailed rules governing the practice and procedure for insolvencies of companies that are set out in the Company Winding Up Rules, 2018 ("**CWR**"), the Insolvency Practitioners Regulations, 2018 ("**Regulations**"), the Foreign Bankruptcy Proceedings (International Cooperation) Rules, 2018 and the Grand Court Rules 1995 (as amended) ("**GCR**"), together with a detailed body of local case law.

90.    The provisions of Part V apply to companies formed and registered under the Companies Law or its predecessors, including companies that are formed as exempted companies or regulated by CIMA.

91.    A Cayman Islands company may be wound up: (a) voluntarily, following the passing of a special resolution of its shareholder(s) or pursuant to a mandatory term in its constitutional documents; (b) compulsorily, by order of the Grand Court; or (c) under the supervision of the Grand Court.

92.    A Cayman Islands company may be compulsorily wound up by the Grand Court where: (a) the company has passed a special resolution requiring the company to be wound up by the Court, (b) the company has not commenced business within a year from its incorporation, or suspends its business for a whole year, (c) the period, if any, fixed for the duration of the company by the articles of association expires, or whenever the event, if any, occurs, upon the occurrence of which it is provided by the articles of association with the company is to be wound up, (d) the

company is unable to pay its debts, or (e) the court is of the opinion that it is just and equitable that the company be wound up.

93.    In this case, the Petitioning Creditors petitioned the Cayman Court for the Liquidation Order based on the Pinnacle Fund's insolvency (*i.e.* its inability to pay the debts owing under the Settlement Agreement), resulting in a compulsory liquidation by order of the Cayman Court and appointment of the Liquidators as the joint official liquidators.

**C.**    **The Role of the Liquidators in the Cayman Islands and their Powers**

94.    The Liquidators are officers of the Cayman Court.  Pursuant to section 110 of the Companies Law, the Liquidators' functions are to:  "(a) collect, realize and distribute the assets of the company to its creditors and if there is a surplus, to the persons entitled to it, and (b) to report to the company's creditors and contributories upon the affairs of the company and the manner in which it has been wound up."

95.    Except as otherwise ordered by the Cayman Court, Schedule 3, Part I to the Companies Law permits the Liquidators, with the sanction of the Cayman Court, to exercise the following powers:

a.    Bring or defend any action or other legal proceeding in the name and on behalf of the company;

b.    Carry on the business of the company so far as may be necessary for its beneficial winding-up;

c.    Dispose of any property of the company to a person who is or was related to the company;

d.    Pay any class of creditors in full;

e.    Make any compromise or arrangement with creditors or persons claiming to be creditors;

f.    Compromise debts and liabilities between the company and a contributory or alleged contributory debtor or person apprehending liability to the company;

g.   Deal with all questions in any way relating to or affecting the assets or the winding-up of the company, to take any security for the discharge of such call, debt, liability or claim, and to give a complete discharge in respect of it;

h.   Sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels;

i.   Raise or borrow money and grant securities therefor over the property of the company;

j.   Engage staff to assist in the performance of his duties; and

k.   Engage attorneys and other professionally qualified persons to assist him in the performance of his duties.

*See* Companies Law, Section 110, Schedule 3, Part 1.

96.     Schedule 3 further provides that an official liquidator is permitted to exercise the following powers without the Cayman Court's supervision:

a.   Take possession of, collect, and get in the property of the company, and for that purpose to take all such proceedings as he considers necessary;

b.   To do all acts and execute in the name and on behalf of the company all deeds, receipts, and other documents, and for that purpose, to use the company seal;

c.   To prove, rank, and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his estate and to receive dividends in the bankruptcy, insolvency, or sequestration in respect of that balance as a separate debt due from the bankrupt or insolvent and rateably with other creditors;

d.   To draw, accept, make, and indorse any bill of exchange or promissory note in the name and on behalf of the company as if made by the company;

e.   To promote a scheme of arrangement;

f.   Convene a meeting of creditors and contributories; and

g.   To do all other things incidental to the exercise of his powers.

*See* Companies Law, Section 110, Schedule 3, Part 2.

97.     In this case, the Cayman Court has authorized the Liquidators to exercise the following powers listed below and all powers set forth in Section 110(2), Part II of Schedule 3 of the Companies Law without further sanction or intervention of the Cayman Court:

a. To appoint counsel, attorneys, and/or other professional advisors, whether in Cayman Islands or elsewhere as they may consider necessary to advise and assist them in the performance of their duties and on such terms and they may think fit and to remunerate them out of the assets of the Pinnacle Fund; and

b. To seek recognition of the Pinnacle Fund's liquidation and their appointment in the Hong Kong Special Administrative Region of the Peoples Republic of China, the Federal Republic of Brazil and the United States of America.

98.     *See* Cayman Liquidation Order ¶ 4.  As set forth, the Cayman Court has authorized the Liquidators to retain U.S. counsel for the purpose of filing this Petition seeking recognition of the Cayman Liquidation under Chapter 15 of the Bankruptcy Code, as well as the additional relief under the Bankruptcy Code eligible to foreign representatives.

99.     Under the Companies Law, the official liquidator is also empowered to investigate (i) the causes for the failure of the debtor company's business, as well as (ii) generally, the promotion, business, dealings and affairs of the debtor company.  *See* Companies Law, Section 102.   A key principle underlying the Companies Law and the Cayman Liquidation is that the claims of investors and creditors within the same class are treated on a *pari passu* basis.  *See* Companies Law, Section 140.

100.    Cayman liquidation proceedings are fair and equitable.  All creditors may have an opportunity to be heard by the Cayman Court and no creditor will be prejudiced because it is foreign-based.

101.    Section 97(1) of the Companies Law provides that, upon the entry of a winding-up order, no suit or other proceeding may be commenced or continued against the company except with leave of the Cayman Court and subject to such terms as that Court might impose.  This automatic stay mirrors the stay imposed in U.S. bankruptcy proceedings and serves to promote the Liquidators' ability to deal with claims and creditors collectively and comprehensively.

D.      **The Pinnacle Fund's Activities in the Cayman Islands**

25

102.    The Pinnacle Fund was established as a Cayman Islands exempted limited company, which then registered with CIMA as a mutual fund.  The Pinnacle Fund maintained its registered office in the country.

103.    An exempted company is prohibited from undertaking business in the Cayman Islands except in furtherance of its business carried on outside of the Cayman Islands unless that exempted company holds a license to carry on business in the Cayman Islands under any applicable law.    Specifically, the subscriber to any proposed company applying for registration as an exempted company under the Companies Law must declare that its operations will be conducted mainly outside of the Cayman Islands or pursuant to a license to carry on business in the Cayman Islands. Subject to compliance with any other applicable licensing or regulatory requirements, in order to further objects outside of the Cayman Islands, an exempted company may effect and conclude contracts and exercise all of its powers necessary for the carrying on of its business, within the Cayman Islands.

104.    In other words, subject to any licensing and regulatory requirements, it can employ staff or agents in the Cayman Islands and maintain an office in the Cayman Islands.

105.    As such, although, upon its incorporation as an exempted limited company and subsequent registration as a Cayman Islands mutual fund authorized by CIMA, the Pinnacle Fund was restricted from carrying on business within the Cayman Islands, that did not mean that the Pinnacle Fund had no presence at all in this jurisdiction.  For example, the registered office of the Pinnacle Fund has been situated in the Cayman Islands since its inception and continues to be so situated.

106.    In addition, the Pinnacle Fund's sole shareholder – Pinnacle Equity – is likewise incorporated and based in the Cayman Islands.  The Pinnacle Fund maintains a bank account in

26

the Cayman Islands.  Finally, under the law of the Cayman Islands, situs of the shares of a Cayman Islands mutual fund is the place of its registration, *i.e.* the Cayman Islands.[5]

107.    The restriction on the carrying on of a mutual fund's business inside the Cayman Islands also does not apply after the mutual fund commences liquidation in the Cayman Islands. Once the Pinnacle Fund was placed into official liquidation, its registered office was transferred to to c/o FTI Consulting (Cayman) Ltd, Suite 3212, 53 Market Street, Camana Bay, P.O. Box 30613, Grand Cayman, KY1-1203, Cayman Islands.

108.    In addition, it is a requirement of Cayman Islands law that at least one official liquidator reside in the Cayman Islands.  Messrs. Morrison and Griffin are residents of the Cayman Islands.

109.    Based upon the above, as well as the Statutory Demand and the Winding-Up Petition, it is clear that all relevant creditors, stakeholders, and shareholders regard the Pinnacle Fund to be an entity that was based in the Cayman Islands.

110.    Although Mr. Batchelor is based in Hong Kong, which assists in the efficient investigation of the Hong Kong Shares and Securities Transactions, the liquidation of the Pinnacle Fund is primarily taking place in the Cayman Islands.  To wit, nearly all of the work to date relating to the Cayman Liquidation has been conducted by Messrs. Morrison and Griffin in the Cayman Islands and all of the work is supervised by and, ultimately, subject to the supervision of the Cayman Court.

111.    Initially, the Liquidators caused the requisite statutory notices, including a notice of their appointment as the Liquidators, and filings to be filed, published, and served with service providers, creditors, other stakeholders and the Cayman Court.

---

[5] *See 160088 Canada Inc. v. Socoa Int'l Ltd.* [1998] CILR 256.

112.    In addition, the Liquidators have requested the Pinnacle Fund's books and records from Halim (as director of Pinnacle Equity and Pinnacle LLC), who has failed to do so.

113.    In January 2019, pursuant to section 101 of the Companies Law, the Liquidators issued additional notices to Halim and Chapler requesting that each submit a statement of the Pinnacle Fund's affairs ("**SOA**") as of the Liquidators' appointment on January 15, 2019. The SOAs required a response by February 12, 2019.

114.    Both refuse to respond, notwithstanding an additional reminder of the statutory deadline from the Liquidators.[6]

115.    The Liquidators' are taking steps to protect the Pinnacle Fund's assets by investigating claims against Pinnacle LLC, Pinnacle Equity, Halim, Chapler and other third-parties involved in, among other suspicious acts, the transfers to the Citibank Account, the fraudulent Securities Transactions, the purchase and sale of the Hong Kong Shares, the timber investments in Brazil, the sham Brazilian carbon credits and the ownership of Ironshore.  The investigation has unfolded primarily from the Liquidators' offices in the Cayman Islands.

116.    The Liquidators also have retained counsel and have arranged for the issuance of numerous letters requesting further information regarding the Pinnacle Fund's assets located throughout the world prior to its entry into liquidation.  Each letter requests specific information concerning the applicable fraudulent act alleged in this Chapter 15 Petition.

117.    The Liquidators likewise have conducted numerous conference calls with creditors and service providers to understand, among other things, the Pinnacle Fund's investment portfolio, use of funds (*i.e.* the transfers to the Citibank Account and to Halim's Citibank account), the use of byzantine transaction structures designed to camouflage the nature of the Pinnacle

---

[6] The Liquidators also served Gerstner with an SOA, who requested an extension to respond.  The Liquidators granted the extension.

Fund's investments and their true beneficiaries, and the ownership structure and day-to-day operations, with a particular focus on the improprieties stemming from Pinnacle LLC and Pinnacle Equity seemingly serving as interchangeable investment managers of the Pinnacle Fund.

118.    Although Halim and Chapler have refused to provide the Pinnacle Fund's books and records nor submit SOAs, the Liquidators have performed a thorough review of the documents from Gerstner and other service providers, much of which are stored in the Cayman Islands, to attempt to understand the Pinnacle Fund's assets and investments.  The Liquidators continue to follow up on outstanding document requests in order to determine the veracity of the information provided.

119.    The Liquidators have also spent many hours corresponding with stakeholders and responding to their queries and concerns surrounding the Cayman Liquidation.   The First Creditors' Meeting was held on March 21, 2019, at which the Liquidators' first report was presented and the Liquidation Committee was formed.  Based on investigations to date, the Liquidators are developing a litigation strategy with Cayman Islands and United States counsel. The substantial majority of the foregoing activities have been directed from the Liquidators' offices in the Cayman Islands.

120.    As the Liquidators' investigations continue, the relationships between the Pinnacle Fund and, among others, Halim, Pinnacle LLC and the Counterparties, are crystallizing.  As a result, potential claims are becoming clearer.   However, further investigation is essential, in particular with respect to the Citibank Account and other assets of Pinnacle LLC in the United States.

121.    Ultimately, any potential claims will be overseen, managed and resolved (by litigation or negotiation) by the Liquidators from the Cayman Islands.

E.    **Additional Relief Requested**

122.    In addition to recognition of the Cayman Liquidation as a foreign main proceeding, the Liquidators respectfully request relief, pursuant to 11 U.S.C. § 1521(a)(4), authorizing discovery.  The Liquidators seek discovery from: (1) Halim, a U.S. citizen, as the sole executive director of the Pinnacle Fund; (2) Pinnacle LLC, which operates and does business in New York, as well as its executives and employees such as Halim and Chapler; (3) Citibank, which held an account for Pinnacle LLC and Halim; and (4) the New York Banks, which each maintain places of business in New York and process wire transfers in U.S. dollars.

123.    As previously noted, the Liquidators were unsuccessful in their attempts to obtain copies of the Pinnacle Fund's books and records from Halim and Chapler.  The documents provided by Gerstner, which the Liquidators have reviewed, have assisted the Liquidators but do not come close to providing the full picture of the Pinnacle Fund.

124.    Given its role as an investment manager of the Pinnacle Fund, it is a certainty that Pinnacle LLC will be in possession of documents in New York that will be relevant to the Cayman Liquidation.  As just one example, these documents will be invaluable in the Liquidators' efforts to ascertain the identities of certain supposed "investors" of the Pinnacle Fund, and to understand if the Pinnacle Fund's investments in Brazil and Hong Kong involved self-dealing and fraud – and who would be complicit – and more fundamentally, whether any investment in the supposed assets of the Pinnacle Fund ever occurred.

125.    The Liquidators have potential claims against third-parties and related parties in connection with investments and certain transfers made by the Pinnace Fund, as well as its principals, shareholders, managers and counterparties, prior to its entry into liquidation, that are the subject of ongoing investigation (the "**Third-Party Claims**").

126.    In particular, the Liquidators have potential claims against Pinnacle LLC and Pinnacle Equity based on the $6.3 million known to be transferred from the Pinnacle Fund to accounts in the name of Pinnacle LLC and/or Pinnacle Equity, including the Citibank Account, between 2016 and 2017.  Additional claims could arise if discovery substantiates the Liquidators' understanding that an additional $2.4 million may have been transferred from the Pinnacle Fund's offshore accounts to Pinnacle LLC, either to the Citibank Account or otherwise.

127.    The Liquidators have attempted to obtain information directly from Pinnacle LLC, Pinnacle Equity, Halim and Chapler as to the Third-Party Claims, but the responses to the Liquidators' inquiries, where even provided, have been wholly inadequate.  As its co-investment manager, the discovery essential to the efficient and orderly winding-up of the Pinnacle Fund will be in the possession, custody, or control of Pinnacle LLC and its executives in New York.

128.     Further, discovery in the United States from Pinnacle LLC is needed to attest to the veracity of any information provided so far by Gerstner, the Petitioning Creditors, and various service providers of the Pinnacle Fund.

129.    Additional critical information concerning the Third-Party Claims is located in the United States in the form of wire transfer records maintained by intermediary banks located in the State of New York, as well as bank statements and other documents reachable only through domestic bank discovery and this Chapter 15 case.  Wire transfers in U.S. dollars to and from parties anywhere in the world are processed by intermediary or correspondent banks, the majority of which are located in New York.

130.    Multiple Third-Party Claims would require accurately tracing and re-creating the flow of funds pertaining to United States dollar-denominated transactions, including the known transfers from the Pinnacle Fund to the Citibank Account and Halim's account at Citibank, and

the possible transfers from the Pinnacle Fund's European bank account to the Citibank Account. In addition, the transfers processed by the New York Banks could provide insight into the supposed United States dollar-denominated Securities Transactions, and in particular, the ultimate beneficiary of the "loan" used to purchase the Hong Kong Shares.

131.    The Liquidators are seeking information concerning previously executed wire transfers only.  The Liquidators seek records of those wire transfers that occurred before the Pinnacle Fund was placed into liquidation to ascertain where the Pinnacle Fund's capital was disbursed, transferred or otherwise dissipated.  Such records are maintained by the intermediary banks and are frequently produced by the banks in response to discovery requests without objection.

132.    Conducting discovery in connection with intermediary banks is critical to the Liquidators' investigation and to the Liquidators' ability to obtain a recovery for the Pinnacle Fund's creditors and investors.  Obtaining this information will assist substantially the Liquidators in realizing assets of the Pinnace Fund and determining whether, where and how the Pinnacle Fund should commence actions against third-parties.

133.    Under the circumstances, the Liquidators respectfully request that, pursuant to 11 U.S.C. § 1521(a)(4), the Court permit them to commence discovery in the United States with respect to: (1) the books and records of Pinnacle LLC and the pre-liquidation management and operation of the Pinnacle Fund; and (2) wire transfer records processed and stored by the New York Banks concerning transfers between and among, *inter alia*, the Pinnacle Fund, Pinnacle LLC, Pinnacle Equity, Halim, Chapler and GSE.

134.    The Liquidators also respectfully request that the Court grant the Liquidators authority to assert claims against parties and assets that are subject to jurisdiction in the United

States to the extent they deem such action appropriate, including Pinnacle LLC, which is subject

to the jurisdiction of United States courts within this District.

## ARGUMENT

## I. THE CAYMAN PROCEEDING SHOULD BE RECOGNIZED UNDER CHAPTER 15

135.    As noted above, "Chapter 15 expresses a strong preference for providing assistance

to foreign representatives in appropriate circumstances.  That congressional preference is not to be

lightly disturbed."  *Platinum Partners II,* 2018 WL 3207119, at \*4.  The Second Circuit has

"frequently understood the importance of judicial deference to foreign bankruptcy proceedings,"

as "the equitable and orderly distribution of a debtor's property requires assembling all claims

against the limited assets in a single proceeding; if all creditors could not be bound, a plan of

reorganization would fail."  *In re Agrokor d.d.*, 591 B.R. at 184.

136.    Section 1517 of the Bankruptcy Code mandates entry of an order recognizing a

"foreign proceeding" if it appears that recognition will not undermine U.S. public policy and: "(1)

such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign

nonmain proceeding within the meaning of section 1502; (2) the foreign representative applying

for recognition is a person or body; and (3) the petition meets the requirements of section 1515."

11 U.S.C. § 1517(a).

137.    Each of those requirements is met here, and entry of an order in the form of Exhibit

1 to this Petition will significantly aid the Liquidators' efforts to investigate and administer the

Pinnacle Fund's assets and liabilities, discover information necessary to the winding-up of the

Pinnacle Fund, including access to information from its co-investment manager that has otherwise

yet to be obtained and wire transfer records evidencing known payments to Pinnacle LLC's

account in the United States, and ensure a fair and equitable treatment of and greater distributions

to the Pinnacle Fund's creditors and interest holders, including the Petitioning Creditors.

A.     **The Cayman Liquidation is a Foreign Proceeding and the Liquidators
       Are Foreign Representatives**

138.    Section    101(23)    of    the    Bankruptcy    Code    defines    a    foreign

proceeding as:

> a collective judicial or administrative proceeding in a foreign country,
> including an interim proceeding, under a law relating to insolvency or
> adjustment of debt in which proceeding the assets and affairs of the debtor
> are subject to control or supervision by a foreign court, for the purpose of
> reorganization or liquidation.

11 U.S.C. § 101(23).  This definition incorporates the term foreign representative, which the

Bankruptcy Code in turn defines as "a person or body, including a person or body appointed on an

interim basis, authorized in a foreign proceeding to administer the reorganization or liquidation of

the debtor's assets or affairs or to act as a representative of such foreign proceeding."  11 U.S.C.

§ 101(24).

139.    There is no question that the Liquidators and the Cayman Liquidation satisfy each

of these requirements.

140.    First, the Cayman Liquidation is a judicial proceeding in a foreign country, the

Cayman Islands, subject to the control and supervision of the Cayman Court.  All claims against

the Pinnacle Fund may be submitted in the Cayman Liquidation and all claimants have the right

to access the Cayman Court.

141.    Second, the Cayman Liquidation is being conducted by the Liquidators, who were

appointed by the Cayman Court pursuant to the Companies Law as joint official liquidators to

oversee the winding-up of the Pinnacle Fund according to the provisions of the Companies Law.

142.    As this court held in *Ocean Rig*, 570 B.R. at 700-701 (emphasis added):

> The Cayman Court appointed the [joint provisional liquidators] as "the duly authorised foreign representative[s] of the [Foreign Debtors]" and authorized the JPLs "to seek relief under Chapter 15 of Title 11 of the United States Bankruptcy Code, and to take such steps arising in connection therewith that the JPLs may consider appropriate." … The Cayman Court granted the JPLs the power to "seek recognition of their appointment in any jurisdiction the JPLs deem necessary." … **The JPLs are each proper "foreign representatives" of the Foreign Debtors within the meaning of section 101(24).**

143.    As such, the Liquidators each are a "person authorized in a foreign proceeding to administer the reorganization or the liquidation of [the Pinnacle Fund's] assets or affairs," within the meaning of section 101(24).

144.    Third, the relevant portions of the Companies Law and related rules that govern the Cayman Liquidation, including the UWR, specifically relate to proceedings in the Cayman Islands concerning "insolvency or adjustment of debt." 11 U.S.C. § 101(23).

145.    Finally, the Cayman Liquidation is a "collective … proceeding" because it "considers the rights and obligations of all creditors." *See, e.g., ENNIA Caribe*, 594 B.R. at 638; *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 136 (Bankr. S.D.N.Y. 2012).

146.    As set forth in *Ocean Rig*, 570 B.R. at 701 (internal citations omitted), where a Cayman Islands debtor sought recognition under Chapter 15, this Court held that liquidation in the Cayman Islands constitutes a "collective proceeding" under laws "relating to the insolvency or adjustment or debt" because:

> The Cayman Provisional Liquidation Proceedings and the proposed Cayman Schemes are "collective judicial proceedings" commenced under Parts V and IV, respectively, of the Cayman Companies Law. The statute is applicable to corporate insolvencies (in the case of the provisional liquidations) or the adjustment of debt (in the case of the contemplated schemes)—it is a "law relating to insolvency or adjustment of debt." … Under the Cayman Companies Law, a Cayman Court may (i) give regard to the wishes of creditors for all matters related to the winding up of an insolvent company, (ii) make all debts payable on a contingency basis and all present or future, certain or contingent claims against the company

35

admissible in the proceeding, (iii) appoint a liquidator who is required to convene meetings of the creditors, and (iv) apply the property of the debtor in satisfaction of its liabilities pari passu and distribute such property to creditors according to their rights and interests …

The JPLs are "[o]fficers of the [Cayman] Court," and subject to the control of the Cayman Court. The JPLs or any creditor may apply to the Cayman Court for an order for the continuation of the winding up under the supervision of the Cayman Court … A Cayman debtor's assets and affairs are subject to the control or supervision of the Cayman Court in both provisional liquidation proceedings and proceedings seeking sanctioning of schemes of arrangement …   The purpose of the Cayman Provisional Liquidation Proceedings is reorganization or, should the reorganization fail, liquidation; the purpose of the contemplated Cayman Schemes is reorganization by way of an adjustment of debt.

147.    The Cayman Liquidation proceeds under the same principles.   The Cayman Liquidation unfolds pursuant to the Companies Law, the Liquidators are officers of the Cayman Court, and the purpose of the Cayman Liquidation is the liquidation of the Pinnacle Fund in front of the Cayman Court in a fashion equitable to all interested parties.

148.    In recent years, courts in this district have routinely recognized that official liquidation proceedings brought pursuant to the Companies Law qualify as a "foreign proceeding," and that joint official liquidators appointed and overseen by the Cayman Court qualify as a "foreign representative" for purposes of section 101(23) and (24).   *See, e.g., Ocean Rig*, 570 B.R. at 707-708; *In re Suntech Power Holdings Co., Ltd.,* 520 B.R. 399, 423 (Bankr. S.D.N.Y. 2014) (commencement of Cayman proceedings, together with subsequent activities of liquidators, had the effect of transferring COMI to Cayman); *Millard*, 501 B.R. at 647 (bankruptcy proceeding in the Cayman Islands met all of the statutory requirements of Section 1517, and therefore was recognized as a foreign main proceeding); *In re Platinum Partners Value Arbitrage Fund L.P.*, No. 16–12925 (SCC) (Bankr. S.D.N.Y. Nov. 23, 2016) (Dkt. 27) (official liquidation); *In re Ardent*

*Harmony Fund, Inc.*, No. 16–12282 (MG) (Bankr. S.D.N.Y. Sept. 1, 2016) (Dkt. 17) (official liquidation).

### B.      The Cayman Liquidation is a Foreign Main Proceeding

149.     In the absence of evidence to the contrary, the debtor's registered office, in this case the Cayman Islands, is presumed to be its COMI.  11 U.S.C. § 1516(c); *see Ocean Rig*, 570 B.R. at 702-703.  Here, there is no such contrary evidence.

150.     The Pinnacle Fund registered with CIMA and maintained a registered office in the Cayman Islands.  Most important, almost entirely from their offices in the Cayman Islands, the Liquidators have provided specific notices to interested parties and creditors, in public and media reports, conducted the First Creditors' Meeting and other meetings, and conducted the bulk of its investigation of the causes of the Pinnacle Fund's insolvency.  *See also id.* at 704-705.

151.     In any case, a foreign debtor's COMI is determined at the time the Chapter 15 petition is filed, and the Second Circuit has held "that a debtor's COMI should be determined based on its activities at or around the time the Chapter 15 petition is filed, as the statutory text suggests."  *In re Fairfield Sentry Ltd.,* 714 F.3d 127, 137 (2d Cir. 2013); *Ocean Rig*, 570 B.R. at 703-704.

152.     It is well established that in determining an entity's COMI, courts consider a non-exhaustive list of factors, including: (i) the location of the debtor's assets; (ii) the location of the debtor's books and records; (iii) the location of the majority of creditors; (iv) the commercial expectations and knowledge of creditors; and (v) the location of those who actually manage the debtor.  *See, e.g., Suntech Power Holdings Co., Ltd.,* 520 B.R. at 416 (citing cases and describing consideration of the debtor's "nerve center" including from where the debtor's activities are controlled).

153.    Applying the foregoing factors to this case, there is no doubt that the Pinnacle Fund's COMI is the Cayman Islands.  Since the commencement of the Cayman Liquidation, with the exception of Mr. Batchelor's activities in Hong Kong, all activities associated therewith have been conducted and/or overseen by the Liquidators from the Cayman Islands. Among other things, the Liquidators filed all necessary notices attesting to their appointment, held the First Creditors' Meeting to appoint the Liquidation Committee, engaged in the process of investigating and assessing the claims of the Pinnacle Fund and its creditors and interest holders, gathered information about the operation and management of the Pinnacle Fund, and engaged in discussions with the Petitioning Creditors, Halim, Chapler and other interested parties.

154.    Although Halim and Chapler have refused to provide the Liquidators with the Pinnacle Fund's books and records, once obtained, the records will be located in the Cayman Islands.  The records provided by Gerstner already are located in the Cayman Islands.  The significant intangible rights in the form of potential Third-Party Claims will be controlled and coordinated by the Liquidators from the Cayman Islands.  Consequently, the proceeds resulting from these actions will be paid to and distributed by the Liquidators in the Cayman Islands.  The Liquidators also have hosted teleconference calls with the Liquidation Committee from the Cayman Islands.

155.    Under the circumstances, the Liquidators submit that there is ample evidence and precedent to support recognition of the Cayman Liquidation as a foreign main proceeding.

**C.      Alternatively, the Cayman Liquidation Should Be Recognized as a
          Foreign Nonmain Proceeding**

156.    Section 1502(5) of the Bankruptcy Code defines a foreign nonmain proceeding as "a foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor

has an establishment."  In turn, "establishment" is defined by 11 U.S.C. § 1502(2) as being "any place of operations where the debtor carries out nontransitory economic activity."

157.    The Liquidators respectfully submit that, at a minimum, their activities in the Cayman Islands constitute nontransitory economic activity.  The sole shareholder of the Pinnacle Fund is Pinnacle Equity, which maintained a bank account in the Cayman Islands.  The Pinnacle Fund's legal advisors were based in the Cayman Islands.  *See generally In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 458 B.R. 63, 84-86 (Bankr. S.D.N.Y. 2011) (Bermudan proceedings would be recognized as nonmain proceedings because the fund had Cayman-based directors and employed Cayman auditors and custodians).

158.    Moreover, the Liquidators are continuing to attempt to obtain the books and records from Pinnacle LLC and other sources, realize any assets of the Pinnacle Fund and investigate any potential claims or actions on behalf of the Pinnacle Fund as part of the winding-up of the Pinnacle Fund's affairs, from the Liquidators' offices in the Cayman Islands.  There is no foreign or domestic insolvency proceeding other than the Cayman Liquidation.

159.    As such, there can be no dispute that the Cayman Liquidation is a legitimate insolvency proceeding.  Under the circumstances, and given that its sole shareholder is a Cayman Islands entity and that the substantial majority of the Liquidators' actions take place in the Cayman Islands, at a minimum this Court can recognize the Cayman Liquidation as a foreign nonmain proceeding pursuant to chapter 15 and, further grant the Liquidators the discretionary relief requested.

### D.    The Cayman Liquidation Meets All Other Requirements for Recognition

160.    In addition to being a foreign main (or nonmain) proceeding brought by a duly appointed foreign representative, the Cayman Liquidation meets all other requirements for recognition under section 1515 of the Bankruptcy Code.

161.    Under Section 1515(b) and (c), a Chapter 15 petition "must be accompanied by certain evidentiary documents that are *presumed to be authentic in the absence of contrary evidence*." *In re Oi Brasil Holdings Coöperatief UA*, 578 B.R. 169, 194 (Bankr. S.D.N.Y. 2017) (citation omitted).

162.    The Petition is accompanied by a certified copy of the Liquidation Order issued by the Cayman Court, which evidences the commencement of the Cayman Liquidation and the appointment of the Liquidators as joint official liquidators of the Pinnacle Fund.  The Petition also is accompanied by a declaration that contains a statement identifying all foreign proceedings with respect to the Pinnacle Fund that are known to the Liquidators.  *See* 11 U.S.C. §§ 1515(b), (c).

163.    The Petition likewise is accompanied by a declaration containing the information required by Bankruptcy Rule 1007, including the disclosures required by Bankruptcy Rule 7007.1, a statement indicating that there are no other persons or entities known to the Liquidators that are authorized to administer foreign proceedings with respect to the Pinnacle Fund, and a list of all parties to litigation with the Pinnacle Fund in the United States.  All documents supporting the Petition are in English.  *See* 11 U.S.C. § 1515(d).

164.    For all of these reasons, this Court can and should find that all of the requirements for recognition of the Cayman Liquidation as a foreign main proceeding under chapter 15 have been satisfied.

## II.    <u>DISCOVERY RELIEF IS WARRANTED HERE</u>

165.    Section 1521(a) provides that "[u]pon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief including . . . (4) providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets,

affairs, rights, obligations or liabilities[.]" *See also In re Inversora Eléctrica de Buenos Aires*, 560 B.R. 650, 655 (Bankr. S.D.N.Y. 2016) (in the context of section 1521(a), the "Bankruptcy Code confers exceedingly broad discretion … that would further the purposes of chapter 15 and protect the debtor's assets and the interests of creditors.")

166.    This District has recognized the broad scope of section 1521(a)(4). *See, e.g., Platinum Partners I*, 583 B.R. at 810-811; *In re Millennium Glob. Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012) (citation and footnote omitted) ("Section 1521(a)(4) provides specifically that the Court may enter an order providing for 'the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities.' … By its terms, this provision enables a Foreign Representative to take broad discovery concerning the property and affairs of a debtor.").

167.    This Court has discretion to order disclosure of books, records, papers, electronic correspondence, banking and other information relating to the Pinnacle Fund, its assets or financial affairs located in this District or that is within the possession, custody, or control of parties subject to the jurisdiction of this Court. *See, e.g.,* 11 U.S.C. §§ 1519(a)(2), (3), 1521 (a)(5),(7); *see also In re Gee*, 53 B.R. 891, 905 (Bankr. S.D.N.Y. 1985) (under former section 304, the Court issued order "directing all persons and entities within the Southern District of New York which now have or may hereinafter obtain books and records, to forthwith turn over all such books and records to [Cayman Island Liquidator]"); *see, In re 47-49 Charles St., Inc.*, No. 93 B 42821(CB) (S.D.N.Y. Mar. 30, 1999) ("Title 11, section 521(4) of the Bankruptcy Code clearly requires the Debtor to surrender its books and records to the trustee, and title 11, section 542(e) extends that requirement to attorneys, accountants and other persons who may hold such books and records.").

168.    Any third-party who can be shown to have a relationship with a debtor can be made subject to investigation by a bankruptcy trustee or examiner since the purpose of such an investigation is to aid in discovery of assets.  *See In re Ionosphere Clubs, Inc.,* 156 B.R. 414, 432 (S.D.N.Y. 1993) (citing *In re Vantage Petroleum Corp,* 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983)).

169.    This Court routinely orders similar relief in cases under chapter 15.  *See, e.g.*, *Platinum Partners I*, 583 B.R. at 811, 818-22 (exercising broad discretion to compel production of debtor's accounting records under section 1521(a)(4));  *Millennium Glob. Corp.*, 471 B.R. at 346-47 (noting that "there is no authority in chapter 15 limiting the discovery available to foreign representatives"); *In re Toft*, 453 B.R. 186, 193 (Bankr. S.D.N.Y. 2011) (noting that the foreign representative could take discovery under 15 U.S.C. § 1521(a)(4) even though the debtor had no assets or business in the United States, as this provision is "more explicit" in granting discovery requests than its predecessor statute 11 U.S.C. § 304); *In re Cozumel Caribe, S.A. de C.V.*, No. 10-13913 (MG) (Bankr. S.D.N.Y. Oct. 20, 2010) (granting foreign representative and "any other person properly appointed by the Mexican court" discovery rights under 11 U.S.C. § 1521(a)(4)).

170.    Indeed, and as previously noted in the introduction to this Petition, the precise relief sought by the Liquidators in this case, intermediary bank discovery and bank account discovery in respect of a debtors' assets, affairs, rights, obligations, or liabilities, has been routinely granted by this Court.  *See, e.g., In re HiTs Africa Ltd.*, No. 18-11822 (MEW) (Bankr. S.D.N.Y. 2018) (recognizing Cayman Liquidation as foreign main proceeding and allowing subpoenas to New York Banks); *Platinum Partners Value Arbitrage Fund LP,* No. 16-12925 (SCC) (Bankr. S.D.N.Y. 2016) (recognizing Cayman Islands liquidation as a foreign main proceeding and authorizing discovery almost identical to that sought here); *In re Niton Fund SPC,* 15-13252 (SMB) (Bankr. S.D.N.Y.) (recognizing Cayman Islands liquidation as a foreign main proceeding and authorizing

discovery almost identical to that sought here); *Lawndale Grp. S.A.,* No. 15-11352 (SCC) (Bankr.

S.D.N.Y. July 6, 2015) (granting 1521(a)(4) request to engage in intermediary bank discovery

regarding claims); *Pioneer Freight Futures Co. Ltd.*, No. 13-12324 (Bankr. S.D.N.Y. Aug. 23,

2013) (granting similar intermediary bank discovery relief).

171.    It should also be noted that perhaps because of the obvious relevance of such

information to foreign liquidation proceedings, no bank has objected to the resultant subpoenas

issued.[7]  Moreover, New York law provides these are the banks' records and the banks' records

alone.  *AQ Asset Mgmt. v. Levine,* 974 N.Y.S.2d 332, 342 (1st Dep't 2013) (financial records are

the banks' records; customers have no standing to object to subpoenas for financial records).

172.    Discovery and turnover of information concerning the Pinnacle Fund's assets,

affairs, rights, obligations and liabilities from Pinnacle LLC and its employees and executives,

Citibank and the Discovery Subjects is precisely what the Liquidators seek here, and is essential

to the Liquidators' efforts to fully investigate its claims against third-parties so as to eventually

recover the Pinnacle Fund's assets.  Under the circumstances, the Liquidators respectfully request

that, upon recognition, this Court enter an Order:

> a.  permitting the Liquidators to issue a discovery request to Halim, the sole
> director of the Pinnacle Fund, and Pinnacle LLC and its employees and
> executives to obtain the Pinnacle Fund's books and records and other
> documents, including but not limited to bank account statements, in order
> to, *inter alia*, determine the management and operations of the Pinnacle
> Fund and the involvement of Halim and Chapler in these activities;
>
> b.  permitting the Liquidators to issue a discovery request to Citibank for all
> information concerning the Citibank Account and the account held by
> Halim, and in particular to allow the Liquidators to investigate the transfers
> in 2016-2017 from the Pinnacle Fund to Pinnacle LLC via the Citibank
> Account that may amount to approximately $1.6 million, as well as a
> payment to Halim of approximately $200,000 to his account at Citibank;

---

[7] The basis for this statement is the undersigned has been involved in all but one of the above-stated cases.

    c. permitting the Liquidators to issue discovery requests to additional intermediary or correspondent banks located in the District that process U.S. dollar-denominated wire transfers and maintain records of such transfers with respect to the Discovery Subjects, to wit, the Pinnacle Fund, Pinnacle Equity, Pinnacle LLC, Halim, Chapler and other Counterparties, so as to ascertain information concerning the Pinnacle Fund's assets and operations prior to the commencement of the Cayman Liquidation and critical information concerning the Third-Party Claims, including but not limited to claims relating to the Securities Transactions and the Pinnacle Fund's purported Brazilian assets;

    d. permitting the Liquidators to examine any witnesses located within the territorial jurisdiction of the United States concerning the Pinnacle Fund's assets, affairs, rights, obligations, or liabilities; and

    e. granting the Liquidators' authority to assert claims of the Pinnacle Fund against parties that are subject to jurisdiction in the United States.

## **REQUEST FOR WAIVER OF LOCAL BANKRUPTCY RULE 9013-1(a)**

173.    It is respectfully requested that this Court waive and dispense with the requirement set forth in Rule 9013-l(a) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York that any motion filed shall be accompanied by a memorandum of law on the grounds that the relevant authorities in support of the Petition are contained herein.

## **HEARING DATES AND NOTICES**

174.    Section 1517(c) of the Bankruptcy Code requires that "[A] petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time." Bankruptcy Rule 2002 sets forth a twenty-one day notice requirement to parties in interest with certain exceptions to approve the Petition. If no objections to this Petition are filed by the date ordered for such objections, the Liquidators request that the Court enter the proposed order recognizing the Cayman Liquidation as a foreign main proceeding without a hearing pursuant to Local Rule 2002-2, however the Liquidators and their counsel are of course willing to appear and will be prepared to answer any questions that the Court may have.

175.   Subsection (q)(1) of Rule 2002 governs notice of a petition for recognition of a foreign proceeding.  As per the rule, and as per the practice in similar cases where neither provisional relief is sought nor is there pending United States litigation, the Liquidators propose that once a hearing date has been set by the Court, notice will be given as reasonable and appropriate under the circumstances and pursuant to Rule 2002.

176.   No previous application for the relief requested in this Petition has been made in this or any other court in the United States.

## CONCLUSION

WHEREFORE, the Liquidators respectfully request that this Court enter an Order, substantially in the form of Exhibit 1 to this Petition, granting the relief requested herein and such other and further relief as may be just and proper.

Dated: New York, New York
       May 15, 2019

Respectfully submitted,

HOLLAND & KNIGHT LLP

By: _____
    Warren E. Gluck, Esq.
    Richard A. Bixter Jr., Esq.
    (*pro hac vice forthcoming*)
    Elliot A. Magruder, Esq.
    31 West 52nd Street
    New York, NY 10019
    Telephone:  212-513-3200
    Telefax: 212-385-9010
    Email: warren.gluck@hklaw.com
           richard.bixter@hklaw.com
           elliot.magruder@hklaw.com

*Counsel for the Liquidators of Pinnacle Global
Partners Fund I Ltd. (in Official Liquidation)*

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, Andrew Morrison declares as follows:

My colleagues David Griffin, John Batchelor and I are the duly appointed Joint Official Liquidators of Pinnacle Global Partners Fund I Ltd. (in Official Liquidation), a Cayman Islands mutual fund in liquidation under the supervision of the Grand Court of the Cayman Islands, Cause No. FSD 231 of 2018 (RPJ), I have full authority to verify the foregoing *Verified Petition for Recognition of Foreign Insolvency Proceedings and Application for Additional Relief, Pursuant to Sections 1504, 1507, 1509, 1515, 1517, 1520 and 1521 of the Bankruptcy Code* (the "**Verified Petition**"). I have read the Verified Petition and I am informed and believe that the allegations contained therein are true and accurate to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of May, 2019, in _____ .

_____
Andrew Morrison

*Joint Official Liquidator of Pinnacle Global*
*Partners Fund I Ltd. (in Official Liquidation)*

46

#67588772_v1